80 F.3d 1086
 20 Employee Benefits Cas. 1078
 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,
Cross-Appellant (94-6049),
v.
KENTUCKY STATE POLICE DEPARTMENT, Kentucky Secretary of
Justice, Commissioner of Kentucky State Police
Department, Defendants-Appellants
(94-5850), Cross-Appellees,
Commonwealth of Kentucky, Defendant-Appellee,
Board of Trustees of Kentucky Retirement Systems, Defendants
Third Party, Plaintiffs-Appellees,
George E. Arflack, et al., Third Party Defendants-Appellees,
Harold Kinman, Gilbert Baxter, Louise Bailey, Estate of Troy
Bailey, Third Party Defendants-Appellants (94-6235),
Tyndale Brown, Appellant (94-6050).
 Nos. 94-5850, 94-6049, 94-6050 and 94-6235.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 8, 1996.
Decided April 1, 1996.
 
 On Appeal from the United States District Court for the Eastern District of Kentucky; William O. Bertelsman, Chief Judge.
 
 
 1
 Philip B. Sklover, Johnny J. Butler, E.E.O.C., Washington, DC, George C. Bradley, Joseph Ray Terry, Terry Beck, E.E.O.C., Memphis, TN, and Mary L. Clark (argued and briefed), Office of Gen. Counsel, Washington, DC, for E.E.O.C.
 
 
 2
 Gary R. Hillerich (argued and briefed), Louisville, KY, and Frank E. Haddad, Jr., Louisville, KY, for Kentucky State Police Dept., Kentucky Secretary of Justice, and Com'r of Kentucky State Police Dept.
 
 
 3
 William B. Pettus, Asst. Atty. Gen., Frankfort, KY, for the Com. of Kentucky.
 
 
 4
 Robert W. Kellerman (briefed), and William E. Johnson, Stoll, Keenon & Park, for Bd. of Trustees of Kentucky Retirement Systems.
 
 
 5
 William Henry Van Herp (briefed), Van Herp & Howell, Covington, KY, for Arthur Emmons, Harold Kinman, Gilbert Baxter, Louise Bailey, James Powell and Samuel E. King.
 
 
 6
 Christopher M. Hill (briefed), William D. Kirkland, and Sarah M. Jackson, McBrayer, McGinnis, Leslie & Kirkland, Frankfort, KY, for James B. Jones, Virgil K. Miller, Leo Reynolds, Algin Roberts, Winston Kuykendall, Edward L. Wright and Paul M. Smith.
 
 
 7
 David Van Horn (briefed), Lexington, KY, for Erma Jean Laferty, John Miller and Kenneth D. Russell.
 
 
 8
 James M. Baker (briefed), Frankfort, KY, for Gail McCarty, James Henry Mayes Rose V. Mayes and William Starks.
 
 
 9
 George F. Rabe (briefed), Lexington, KY, for Willian G. Mullins.
 
 
 10
 Dave Whalin (briefed), Landrum & Shouse, Louisville, KY, for Bettye A. Sherrard.
 
 
 11
 George F. Rabe (briefed), Lexington, KY, for William G. Mullins.
 
 
 12
 Catesby Woodford, Miller, Griffin & Marks, Lexington, KY, and James E. Baker, Frankfort, KY, for Gail McCarty.
 
 
 13
 Richard Clay (briefed), Clay & Clay, Danville, KY, for Tyndale Brown.
 
 
 14
 Before: ENGEL, KENNEDY, and SUHRHEINRICH, Circuit Judges.
 
 
 15
 KENNEDY, Circuit Judge.
 
 
 16
 This case presents cross appeals from the District Court's judgment awarding relief to Kentucky state troopers mandatorily retired at age fifty-five under KY.REV.STAT. ANN. § 16.505(15) (Baldwin 1994). The Kentucky State Police Department ("KSP") contends that the District Court erred by tolling the statute of limitations for state troopers retired before October 19, 1981 and by excluding two memos that it claims gave troopers constructive notice of their rights under the Age Discrimination in Employment Act of 1967 ("ADEA"); it also asserts that the District Court erred in calculating back pay and other relief for the mandatorily retired officers. In its cross appeal, the Equal Employment Opportunity Commission ("EEOC") contends that the District Court erred when it refused to toll the statute of limitations for employees retired between April 6, 1978 and January 1, 1979; when it denied EEOC's motion to amend the names of troopers not included in the original complaint; and when it refused to award prejudgment interest for the entire back-pay period. For the following reasons, we shall affirm in part and reverse in part.
 
 
 17
 * EEOC sued KSP and other defendants on August 29, 1984, alleging that KSP's policy of mandatorily retiring state troopers at age fifty-five violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1). Following a bench trial, the District Court upheld Kentucky's mandatory retirement policy on the ground that, for state troopers, age constituted a bona fide occupational qualification. After reversal by this court, EEOC v. Kentucky State Police Dep't, 860 F.2d 665 (6th Cir.1988), cert. denied, 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989),[1] the District Court entered judgment providing back pay and other relief to the officers mandatorily retired under the policy between October 19, 1981 and December 31, 1986. The District Court subsequently entered a judgment providing relief for officers retired between January 1, 1979 and October 19, 1981.
 
 
 18
 This appeal presents three main issues: whether the District Court appropriately tolled the statute of limitations; whether the District Court properly excluded two documents KSP offered to show that the officers had constructive knowledge of their rights under ADEA; and whether the District Court properly calculated the officers' back pay awards and other relief.
 
 II
 
 19
 The first issue raised in this appeal concerns the District Court's decision to toll the statute of limitations for troopers retired before October 19, 1981. On March 28, 1983, two KSP officers challenged KSP's mandatory retirement policy by filing ADEA charges with the EEOC. The officers stated that they did not become aware of the legal grounds for their age discrimination claim until March 2, 1983, when the Supreme Court decided EEOC v. Wyoming, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), which held that Congress could constitutionally extend the protection of the Age Discrimination in Employment Act of 1967 to state and local government employees.
 
 
 20
 On the basis of the officers' complaints, EEOC brought an ADEA suit against KSP's mandatory retirement policy for state troopers on August 29, 1984. On July 3, 1989, EEOC filed a report with the District Court in which it acknowledged that it could only seek relief for state troopers mandatorily retired on or after October 19, 1981. EEOC reached this conclusion after choosing a two-year statute of limitations, which it believed was appropriate because KSP had not willfully violated the ADEA. EEOC added to the two-year limitations period a ten-month and ten-day period in which it tried to negotiate a voluntary settlement of the dispute; subtracting this combined amount of time from the August 29, 1984 complaint, the EEOC arrived at a cut-off date of October 19, 1981. During a February 23, 1990 status conference, however, EEOC learned that KSP had failed to post notices alerting employees to their rights under the ADEA.[2] At that conference, EEOC also learned that KSP's employee manual specifically omitted any reference to age discrimination as a prohibited employment practice.
 
 
 21
 EEOC moved the District Court to toll equitably the statute of limitations to April 6, 1978, the date on which ADEA took effect for state and local government employees. The District Court referred the matter to a magistrate judge, who heard testimony on the issue of officers' actual or constructive knowledge of their rights under the ADEA. The various parties to the suit stipulated that the testimony of three mandatorily retired officers would be representative of the class of troopers retired before October 19, 1981. These troopers testified that they lacked actual or constructive knowledge of their rights to be free from age discrimination because they had never seen any ADEA notice posted by KSP or otherwise been informed by KSP of their rights, and that they had relied on the KSP employee manual's description of the mandatory retirement policy. The three officers also testified that they did not become aware of their rights until EEOC v. Wyoming was decided.
 
 
 22
 The District Court held that KSP's failure to post the required ADEA notices and its omission of a reference to age discrimination in its employee manual constituted "affirmative misleading conduct" sufficient to toll the statute of limitations until January 1, 1979. Nevertheless, the District Court declined to toll the limitations period beyond January 1, 1979 because that was the date EEOC had "plead all these years."[3]
 
 
 23
 The District Court also denied EEOC's motion to amend its complaint to add three troopers retired after January 1, 1979 who did not learn of the suit until it was on remand. The EEOC had relied on the Kentucky Retirement Board (the "Board") for the names of potential claimants. The Board had not included the names of these three officers because each had retired before his fifty-fifth birthday in reliance upon the mandatory policy.[4] In 1993, the District Court also denied EEOC's motion to amend its complaint to add six officers who had been mandatorily retired between April 6, 1978 and January 1, 1979.[5]
 
 
 24
 How we resolve the tolling issue depends in part on our view of the District Court's decision to exclude two documents KSP offered to show troopers' constructive knowledge of their right to be free from age discrimination; because the troopers had such knowledge, KSP argued, the statute of limitations should not have been equitably tolled.
 
 
 25
 At a hearing on February 5, 1993, KSP sought to introduce two documents that, it claimed, showed that the troopers had constructive notice of their right to be free from age discrimination. The first document, dated April 3, 1978, was on the stationery of the Office of the Secretary of Kentucky's Department of Justice. The memo was entitled "Equal Employment Opportunity Policy," and it stated, in part:
 
 
 26
 2. All employees of the Department shall be treated impartially without regard to race, color, religion, national origin, sex, age, or handicap in rates of pay or other forms of compensation, promotions, upgrading, demotion, or transfer, lay off, termination, and selection for training programs within the Department.
 
 
 27
 Any Department position which warrants the application of the bonafide (sic) occupational qualification exception shall be documented as such.
 
 
 28
 3. This order is to be displayed in a prominent place.
 
 
 29
 The second document, which was dated May 21, 1981, was on the stationery of the Kentucky State Police; it was a memorandum from Marion D. Campbell to "All Employees" that stated, in part:It is the policy of the Bureau of State Police to provide equality to all employees and persons regardless of their race, creed, color, handicap, national origin, sex, age, political affiliation or beliefs.
 
 
 30
 This memorandum went on to announce the designation of Major Larry Fentress as the agency's Equal Employment Opportunity Counselor, and it referred to an attached memo describing the Department of Justice's procedure for filing complaints.
 
 
 31
 At the February 5, 1993 hearing at which KSP first tried to enter these documents into evidence, the District Court excluded them on the ground that the evidence was unduly delayed: "This case has been going on since 1983. You had plenty of time to go through the file. The Court is not taking any new evidence now."
 
 
 32
 On March 11, 1993, KSP filed a motion to supplement the record with the District Court in which it again sought to admit the 1981 memo into evidence. KSP attached an affidavit from Captain Larry Fentress, in which Fentress stated that "the failure to discover these documents in the original search was the result of excusable neglect, due to the fact that the central files of the Kentucky State Police dating to these time periods had been microfilmed in 1981 and either lost or inadvertently destroyed ... " and that the documents were ultimately found in collateral records. KSP also attached an affidavit from Gary Bush, an analyst in the Kentucky State Police Information Services Branch, stating that the microfilmed records were either lost or destroyed. On April 5, 1993, the District Court denied "defendants' motion to supplement the record ... for the reasons stated by the Court at the February 5, 1993, hearing and for the additional reasons stated in the responses ... to the motions...." In their responses to KSP's motion, the EEOC and other lawyers for the mandatorily retired troopers had argued against supplementing the record on the grounds that the 1981 memo in question applied to KSP's civilian employees, not its troopers; that there was no evidence that any of the mandatorily retired troopers actually received a copy of the memo; and that KSP's employee manual, by which it informed employees of all KSP policies, conflicted with the 1981 memo by specifically excluding age discrimination from a list of prohibited employment practices.
 
 
 33
 On June 10, 1993, KSP sought to introduce the April 1978 document on cross-examination of two former KSP officers when the case was before the magistrate judge. In attempting to authenticate the 1978 memo, KSP's attorney asked Officer Newman whether he was aware that the Kentucky Department of Justice regularly issued memos that included the direction that they be posted in a prominent place, and whether that direction was regularly obeyed. Officer Newman responded: "Not knowing specifically what you are talking about, I would assume they would be, yes." KSP then handed Officer Newman the April 3, 1978 document, asked whether he had seen documents of this type, and then asked him to read the document out loud. Counsel for the officers objected on the grounds that there was no "showing that Mr. Newman regularly got these types of documents." The court then asked Officer Newman what his position was on April 3, 1978. Officer Newman replied that he was "a captain in supply." The court then asked, "You were not the commissioner?" Officer Newman replied, "No, sir. I have never seen this document." The magistrate judge then sustained the objection but allowed it to be offered by avowal.
 
 
 34
 KSP also sought to introduce the 1978 document before the magistrate judge during cross-examination of Officer Mullins. Officer Mullins testified that he was an attorney with KSP between 1975 and 1980, and that during the course of his duties he would review information that came from the Kentucky Department of Justice. KSP's attorney asked Officer Mullins whether he could recall any situations where a document like the 1978 Department of Justice memo would not have been displayed in a prominent place. Officer Mullins responded: "[T]hat would have probably gone to our Equal Employment Opportunity counselor at that time. It may--may or may not have come through my office; I don't know." KSP moved to admit the document into evidence, but the magistrate judge sustained one of the officers' attorney's objection.
 
 
 35
 * KSP first argues that the District Court erred in not granting its motion for summary judgment on the grounds that all claims were time-barred. We review the District Court's legal conclusion as to the date the claims accrued de novo. Waxman v. Luna, 881 F.2d 237, 240 (6th Cir.1989).
 
 
 36
 KSP cites Delaware State College v. Ricks, 449 U.S. 250, 259, 101 S.Ct. 498, 504-05, 66 L.Ed.2d 431 (1980), for the proposition that the statute of limitations period begins to run when the aggrieved person becomes aware of the allegedly discriminatory act. According to KSP, Kentucky State Troopers became aware of the allegedly discriminatory act on the date they were hired, for that is when they would have been informed of KSP's mandatory retirement policy. While that might be true if the policy being challenged were facially neutral, as EEOC argues, a different rule applies when the statute at issue is facially discriminatory. In Lorance v. AT & T Technologies, Inc., the Supreme Court noted that "[t]here is no doubt, of course, that a facially discriminatory ... system can be challenged at any time" and offered the following rationale for the distinction:
 
 
 37
 With a facially neutral system the discriminatory act occurs only at the time of adoption, for each application is nondiscriminatory (seniority accrues for men and women on an identical basis). But a facially discriminatory system (e.g. one that assigns men twice the seniority that women receive for the same amount of time served) by definition discriminates each time it is applied.
 
 
 38
 490 U.S. 900, 912 & n. 5, 109 S.Ct. 2261, 2269 & n. 5, 104 L.Ed.2d 961 (1989). KY.REV.STAT. ANN. § 16.505(15) mandatorily retires state troopers on the first day of the month following their fifty-fifth birthday. As such, it facially discriminates between troopers younger than fifty-five years of age and those older than fifty-five years of age. Therefore, a claim becomes ripe when the statute is applied, e.g. when the trooper is mandatorily retired. Thus, the District Court did not err in denying KSP's motion for summary judgment.
 
 
 39
 KSP next argues that the District Court erred in tolling the statute of limitations period back to January 1, 1979. In response, EEOC argues that the District Court erred by not tolling the statute of limitations period further, until April 6, 1978. We review the District Court's decision to deny or grant equitable tolling for abuse of discretion. E.E.O.C. v. O'Grady, 857 F.2d 383, 394 (7th Cir.1988).
 
 
 40
 This Circuit has identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations:
 
 
 41
 (1) lack of actual notice ...; (2) lack of constructive knowledge ...; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) plaintiff's reasonableness in remaining ignorant of the notice requirement.
 
 
 42
 Andrews v. Orr, 851 F.2d 146, 151 (6th Cir.1988). Here, the troopers lacked actual notice of their rights under ADEA. The magistrate judge heard testimony from three officers, and all parties stipulated that these officers' testimony was representative of the class of officers retired under Kentucky's policy. The three officers testified that they did not know of their rights under ADEA until the Supreme Court decided EEOC v. Wyoming, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). Second, the District Court found that the troopers lacked constructive knowledge of their rights under ADEA because "[KSP] failed to post the required ADEA notices and the claimants relied on KSP's policy manual which lists everything but age as a part of its affirmative action policy." Third, the officers were diligent in pursuing their rights. Upon becoming aware of the Supreme Court's opinion in EEOC v. Wyoming, officers filed timely complaints with the EEOC. Fourth, KSP can claim no unfair prejudice when it failed to comply with ADEA's posting requirement. Finally, the officers' delay in bringing their claim was reasonable because only after the Supreme Court decided EEOC v. Wyoming did the troopers believe they could bring an ADEA challenge to Kentucky's mandatory retirement policy for state troopers.
 
 
 43
 KSP argues that the District Court erred in equitably tolling the statute of limitations because KSP was not guilty of misconduct. KSP argues that "[a] party seeking protection of the equitable tolling doctrine must establish that the party's ignorance of the filing requirements is attributable to the employer's misconduct." KSP's argument mistakes the doctrine of equitable estoppel for that of equitable tolling. Equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-51 (7th Cir.1990), cert. denied, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). Equitable tolling, however, "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." Id. at 451. Thus the District Court did not need to find that KSP had engaged in wrongful conduct for equitable tolling to apply. Moreover, the District Court did find some wrongful conduct; it held that "[e]ven though KSP did not 'maliciously' leave age out of its affirmative action policy, leaving it out coupled with the failure to post ADEA notices as required is sufficient to meet the requirements of some 'affirmative misleading conduct' on the part of defendants to toll the statute of limitations." Thus the District Court did not abuse its discretion by tolling the statute of limitations period.
 
 
 44
 EEOC argues that the District Court did, however, abuse its discretion by not tolling the limitations period back until April 6, 1978, the date on which ADEA became applicable to states and localities. The District Court rejected EEOC's motion to toll the limitations period until April 6, 1978 because in its August 29, 1984 complaint, EEOC alleged that KSP had violated the ADEA "[s]ince at least January 1, 1979." The District Court appears to have rejected EEOC's motion to toll the limitations period until 1978 on the grounds that "the January 1979 date ... is what has been plead all these years."
 
 
 45
 EEOC argues that it chose 1979 as the date to include in its complaint only because it did not yet know that KSP had failed to post the required ADEA notice and that KSP had omitted age discrimination from the list of prohibited employment practices in its employee manual. EEOC also argues that "[a]ll of the reasons that support the district court's decision to toll the limitations period from January 1, 1979 apply with equal force to the period from April 6, 1978...." We agree. Having decided that the limitations period should be tolled for troopers retired between 1979 and 1981, the District Court should have tolled the limitations period until 1978.
 
 
 46
 Likewise, we find that the District Court abused its discretion in denying EEOC's motion to amend its complaint to add the names of three officers who were not included in the original complaint because Kentucky's Retirement Board, which furnished names of potential claimants to EEOC, failed to include these officers' names. The Board had not included the names of these three officers because each had retired before their fifty-fifth birthday in reliance upon the mandatory policy.[6] These three officers raise the same claims as other members of the class. The District Court did allow non-charge filing claimants who retired between January 1, 1979 and October 29, 1981 to "piggyback" on the original claimants' charges, but it denied piggybacking for these three officers on the grounds that "[t]here has to be some cut off somewhere." Although we would not ordinarily disturb a district court's legitimate efforts to bring a lengthy dispute like this to a close, we think it abused its discretion in denying EEOC's motion to amend. KSP was certainly on notice about the nature of the claims that would be brought against it by officers retired during the period these three officers retired, and thus allowing these three officers to bring their complaints imposes no significant hardship on KSP. Moreover, but for the Kentucky Retirement Board's omission of their names, they would have been included in the complaint. For these reasons, we hold that EEOC may amend its complaint to add the names of the three officers retired after 1979.
 
 B
 
 47
 Of course whether equitable tolling was proper also depends on whether the District Court properly excluded two documents KSP claims prove that officers were aware of their ADEA rights. We review the District Court's decision for a clear abuse of discretion. Zamlen v. City of Cleveland, 906 F.2d 209, 215 (6th Cir.1990), cert. denied, 499 U.S. 936, 111 S.Ct. 1388, 113 L.Ed.2d 444 (1991).
 
 
 48
 With respect to the April 3, 1978 memo on the Department of Justice stationery, we are inclined to believe that the District Court abused its discretion in excluding the memo during the February 5, 1993 hearing on the grounds of undue delay. First, KSP offered undisputed affidavits from two KSP employees that the document was not discovered until January of 1993 because records stored on microfilm were lost or destroyed when KSP moved its headquarters. Second, although, as the District Court correctly noted, this dispute had been ongoing since 1984 and thus the delay in bringing forth the evidence was significant, the tolling issue was not raised until 1990, when EEOC changed its position with respect to whether officers retired before 1981 were time barred from bringing claims. Considering that the District Court allowed the EEOC in 1990 to add claimants retired between 1979 and 1981 even though the suit had "been going on since 1983," it appears the District Court abused its discretion in not granting KSP the same degree of flexibility.
 
 
 49
 Nevertheless, "even if the lower court's decision [to exclude evidence] amounts to an abuse of discretion, it will not be disturbed on appeal if it did not result in a substantial injustice...." Zamlen, 906 F.2d at 216. Here, KSP sought to introduce the 1978 document to show that state troopers had constructive knowledge of their right to be free from age discrimination under the ADEA. If troopers had such constructive knowledge, equitable tolling would not be available to protect their otherwise untimely claims. KSP admits that it did not post the notices required under 29 U.S.C. § 627, which states:
 
 Notices to be posted
 
 50
 Every employer, employment agency, and labor organization shall post and keep posted in conspicuous places upon its premises a notice to be prepared or approved by the Equal Employment Opportunity Commission setting forth information as the Commission deems appropriate to effectuate the purposes of this chapter.
 
 
 51
 If an employer fails to comply with § 627 by not posting the required ADEA notices, "the charge-filing period will not begin to run until the employee either retains an attorney or acquires actual knowledge of his rights under the ADEA." Schroeder v. Copley Newspaper, 879 F.2d 266, 271 (7th Cir.1989) (internal quotation marks omitted). KSP did not comply with this section of the ADEA. Moreover, the 1978 document in question does not apprise employees of the existence of a statute of limitations; it does not mention the ADEA; and it does not mention any process of pursuing a complaint by contacting an EEOC officer. Moreover, KSP neither authenticated the document nor proved that it was actually posted or seen by KSP troopers. KSP first tried to authenticate the document by questioning Officer Newman. But Officer Newman testified that he had "never seen this document." KSP then tried to introduce it by asking Officer Mullins whether memos from the Department of Justice, such as the 1978 memo in question, were regularly posted in a prominent place and whether he could recall any occasions when the order to post such memos was not carried out. Officer Mullins responded that the 1978 memo "would have probably gone to our Equal Employment Opportunity counselor at that time. It may--may or may not have come through my office; I don't know.... I may or may not have seen it." For these reasons, we find no substantial injustice requiring us to overturn the District Court's decision to exclude the 1978 memo. See Zamlen, 906 F.2d at 216.
 
 
 52
 With respect to the 1981 memo, KSP filed a motion to supplement the record and attached to the motion two affidavits from KSP employees describing how the document came to be found in 1993, ten years after this dispute began. The District Court denied KSP's motion "for the reasons previously stated by the court at the February 5, 1993, hearing, and for the additional reasons stated in the responses (Docs.# # 318, 319, 324) to the motions." At the February 5, 1993 hearing, the District Court had explained that it was excluding the document because of KSP's undue delay in bringing it before the court. The responses to the motions (Docs.# # 318, 319, 324) argued that the motion should be denied because the 1981 memo in question applied to KSP's civilian employees, not its troopers; that there was no evidence that any of the mandatorily retired troopers actually received a copy of the memo; and that KSP's employee manual, by which it informed employees of all KSP policies, conflicted with the 1981 memo by specifically excluding age discrimination from a list of prohibited employment practices. Although we remain skeptical about whether the offer of the memo was unduly delayed, we find that, considering the troopers' other objections, there was no substantial injustice requiring us to overturn the District Court's denial of KSP's motion to supplement the record with the 1981 memo. See Zamlen, 906 F.2d at 216.
 
 III
 
 53
 This appeal also presents a number of issues concerning the appropriateness of the relief the District Court awarded to the mandatorily retired troopers. The District Court offset from the officers' back-pay awards any pension benefits they received from the Retirement Board between their date of retirement and December 31, 1986, the date at which back-pay awards ceased, and any amounts they would have been obliged to pay into the retirement system during those years.
 
 
 54
 The District Court offset the officers' back-pay awards by net, rather than gross, earnings troopers received from other employment following their mandatory retirement. The District Court included within back-pay awards amounts for lost compensatory leave when it was reasonably certain that officers would have worked overtime. The District Court refused to offset income and social security taxes that would have been owed; it also excluded any unemployment compensation the officers received. The District Court awarded prejudgment interest on the back-pay awards at the rate of four percent compounded annually. However, the District Court ruled that prejudgment interest should only begin to accrue on January 1, 1987 rather than applying prejudgment interest to the entire period of the back-pay award.
 
 
 55
 Finally, the District Court found that the officers exercised reasonable diligence in mitigating their damages after being mandatorily retired. The District Court also found that the mandatorily retired officers could have continued to work after their fifty-fifth birthday and that certain employees who retired before the date of their fifty-fifth birthday were still eligible for relief because they retired in reliance on KSP's mandatory retirement policy.
 
 
 56
 KSP first argues that the District Court erred by awarding prejudgment interest when "there was absolutely no evidence of willfulness" regarding its violation of the ADEA. We review the District Court's decision to award prejudgment interest for abuse of discretion. McMahon v. Libbey-Owens-Ford Co., 870 F.2d 1073, 1079 (6th Cir.1989). KSP's argument about the need to find a willful ADEA violation before awarding prejudgment interest is contrary to this Circuit's holding in Tiemeyer v. Community Mut. Ins. Co.: "Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award." 8 F.3d 1094, 1102 (6th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1371, 128 L.Ed.2d 48 (1994); see also Partington v. Broyhill Furniture Indus. Inc., 999 F.2d 269, 274 (7th Cir.1993) (noting that "prejudgment interest is ... necessary to compensate a plaintiff fully for a loss suffered at time t and not compensated until t + 1, 2, 3 ... n[and] is presumptively available in ... suits under the age discrimination law") (citations omitted). Indeed, "it is ordinarily an abuse of discretion not to include pre-judgment interest in a back-pay award...." Clarke v. Frank, 960 F.2d 1146, 1154 (2d Cir.1992). Thus, we cannot conclude that the District Court abused its discretion in awarding prejudgment interest.
 
 
 57
 KSP next argues that the District Court abused its discretion by awarding compounded prejudgment interest. KSP contends that awarding compounded interest grossly overcompensates the mandatorily retired troopers because this method assumes that all income from a given year would be used for savings. As the Second Circuit has declared, "[b]ack pay ... should ordinarily include compound interest." Sands v. Runyon, 28 F.3d 1323, 1328 (2d Cir.1994). Back pay is awarded to make the claimant whole, and such relief "can only be achieved if [prejudgment] interest is compounded." Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). We are inclined to agree, but we believe that the decision whether to award compound or simple interest is in the trial court's discretion. We find that the District Court did not abuse its discretion by awarding compounded prejudgment interest.
 
 
 58
 EEOC argues, however, that the District Court erred in determining the period to which prejudgment interest should apply. EEOC argues that the District Court should have applied prejudgment interest to each year of the back-pay award. The District Court instead chose to apply prejudgment on the back-pay award starting on January 1, 1987 through the date of final judgment. It did so after accepting the findings of the magistrate judge, who understood the EEOC's proposal to apply prejudgment interest to the entire period of the back-pay award as follows:
 
 
 59
 It appears that EEOC argues that prejudgment interest should run from an officer's actual date of retirement (i.e. the date when an officer was mandatorily retired in accordance with the policy in question) until the date of judgment. The Magistrate Judge rejects this position because, under this scenario, an officer who was mandatorily retired in 1984, and to whom this court has awarded back pay for the years 1985 and 1986, would be permitted to receive prejudgment interest on his back pay award for 1985 and 1986 beginning in 1984, notwithstanding the fact that, if he had been working, he would not yet have earned his 1985 and 1986 awards in 1984.
 
 
 60
 We believe that this reasoning is incorrect. Awarding prejudgment interest on a mandatorily retired trooper's lost wages in 1984, rather than beginning to apply it on January 1, 1987, does not mean that that trooper "would be permitted to receive prejudgment interest on his back-pay award for 1985 and 1986 beginning in 1984...." Thus, we believe the magistrate judge misinterpreted EEOC's proposed method for calculating prejudgment interest. EEOC's proposal largely tracked what the magistrate judge described as the "Financially proper approach" to calculating prejudgment interest, except that the EEOC proposed to begin calculating interest three months into the first year of an employee's back pay award rather than waiting until the first day of the second year of the back-pay award.
 
 
 61
 Instead of recommending that the District Court use the "Financially proper approach," the magistrate judge recommended an alternative approach. The magistrate judge did so because of its concern that the "Financially proper approach" would
 
 
 62
 not permit an officer to actually receive his money as expeditiously [as under the approach recommended by the Magistrate]; the additional computations [necessary to follow the "Financially proper approach"] may well result in further delays in processing the officers' awards. As noted above this delay would appear to outweigh any minimal financial benefit which the officers would derive under this approach.
 
 
 63
 Ultimately, the magistrate judge "recommend[ed] that the decision [as to when prejudgment interest should begin to apply] should be that of the officers. If they desire the more financially sound approach, the magistrate judge finds that they are entitled to have prejudgment interest calculated in that manner."
 
 
 64
 On the basis of the magistrate judge's recommendation that the ultimate decisionmaking authority on the question of when to apply prejudgment interest rested with the officers themselves, the EEOC contacted nineteen officers. Of these, sixteen indicated their desire to receive interest over the entire period of their back-pay award. Three others indicated that they would be willing to wave the interest on that period if it would help speed the process.
 
 Nevertheless, the District Court
 
 65
 order[ed] that prejudgment interest be calculated in the manner recommended by the Magistrate in his Second Proposed Findings of Fact and Recommendation. McMahon v. Libbey-Owens-Ford Co., 870 F.2d 1073, 1079 (6th Cir.1989). Namely, prejudgment interest should be calculated from January 1, 1987, until the date of judgment. This recommendation is both sound and equitable, resulting in reasonably full compensation to the officers and expeditious resolution of their claims.
 
 
 66
 Thus the District Court appears to have misinterpreted the magistrate judge's recommendation. Whereas the magistrate judge recommended that the officers be given the right to decide when prejudgment should begin, the District Court interpreted the magistrate judge as strictly recommending that prejudgment interest begin on January 1, 1987.
 
 
 67
 Moreover, we find the decision to begin prejudgment interest only after January 1, 1987 problematic because it conflicts with the underlying goal of providing prejudgment interest, viz. making the officers whole by providing them the full economic value of their unlawfully held wages. Awarding prejudgment interest only beginning in 1987 does not fully reimburse employees for the value of the money they lost between the date they were mandatorily retired and January 1, 1987; rather, it gives KSP an interest-free loan for that period:
 
 
 68
 While wage earners ... are being unlawfully deprived of a minimum wage ..., the noncomplying employer, however innocent, is benefitting from his violations, since he has the use of his employee's money. Unless the delinquent employer is required to restore his employee to the position he would have been in had there been no violation, via an award of liquidated damages or interest on the back wage award, the employer will thereby have been unjustly enriched by his own violation at his employee's expense.
 
 
 69
 McClanahan v. Mathews, 440 F.2d 320, 326 (6th Cir.1971). By awarding prejudgment interest at all, the District Court indicated its desire to make the troopers whole. But the troopers are not made whole by the District Court's order, for it denies the troopers interest for the years between their forced retirement and January 1, 1987. Thus, we are unable to reconcile these apparently conflicting signals. Prejudgment interest ordinarily should apply to each year an employee lost the use of her wages.[7] See Kelly v. American Standard Inc., 640 F.2d 974, 982 (9th Cir.1981) ("In assuring equitable relief under the ADEA, the loss of use of this money during the period payments were withheld ... should be compensated by payment of interest.") (emphasis added). Here, the employees lost the use of their wages between the date of their forced retirement and January 1, 1987 and between January 1, 1987 and the date of final judgment. These employees should be compensated for both periods.
 
 
 70
 For all these reasons, we find that the District Court abused its discretion in ordering prejudgment interest to begin on January 1, 1987. On remand, the awards should be modified such that prejudgment interest begins to apply on the first day of the second year of the back-pay award, for that approach complies with our understanding of the purpose behind awarding prejudgment interest and conforms to the wishes of the officers themselves, who, under the magistrate judge's recommendation, were to choose when prejudgment interest would apply. We understand that the EEOC has computer models that would make these calculations quite easy,[8] thereby meeting the magistrate judge's and the District Court's concerns about providing expeditious relief.
 
 
 71
 KSP next argues that the District Court erred by declining to deduct amounts the troopers would have owed for taxes and by declining to deduct amounts the troopers received in the form of unemployment compensation. With respect to the issue of deducting taxes that would have been owed, this Circuit has held that "[b]ackpay awards should not be reduced by the amount of income and social security taxes which would have been deducted from the wages the claimant would have received but for discrimination." Rasimas v. Michigan Dep't of Mental Health, 714 F.2d 614, 627 (6th Cir.1983), cert. denied, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984).[9] With respect to unemployment benefits, a divided Court in Rasimas held that they too are collateral benefits that should not be deducted from back pay awards. Id. at 627-28 & n. 13. Were this matter before us on a case of first impression, we may well have decided it differently. See Lussier v. Runyon, 50 F.3d 1103, 1108-09 (1st Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 69, 133 L.Ed.2d 30 (1995) (describing four-to-three circuit split on whether collateral benefits should be deducted from back pay awards and siding with those appeals courts that have given trial courts discretion to deduct such benefits). While some benefits are truly collateral, and to deduct them from back pay awards would provide a windfall to the unlawfully discriminating employer, we question the applicability of this doctrine when the employer is the state and where the benefit--unemployment compensation--is administered and largely financed by the same entity, for, in such cases, the benefit does not appear to be truly collateral. Nevertheless, we are bound by this Circuit's holding in Rasimas. United States v. Williams, 949 F.2d 220, 221 (6th Cir.1991), cert. denied, 504 U.S. 958, 112 S.Ct. 2308, 119 L.Ed.2d 229 (1992) (noting that "one panel of this court is bound by the on-point published decision of an earlier panel"). Thus, the District Court did not abuse its discretion in declining to deduct unemployment compensation.
 
 
 72
 KSP also claims the District Court erred when it included overtime pay in the back-pay awards. The District Court had legal authority to include such amounts in the back-pay awards. Rasimas, 714 F.2d at 626 ("Sick leave, vacation pay, pension benefits and other fringe benefits the claimant would have received but for discrimination should also be awarded."). Moreover, the District Court's factual findings on the amount of compensatory time to which troopers were entitled were based on officers' testimony during individualized entitlement hearings and are not clearly erroneous. KSP also argues that the District Court erred when it chose to deduct net income, rather than gross income, from officers' back-pay awards. We disagree. As the Supreme Court noted in NLRB v. Gullett Gin Co., Inc., "employees may be reimbursed for earnings lost by reason of the wrongful discharge, from which should be deducted net earnings of employees from other employment during the back-pay period...." 340 U.S. 361, 363, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1951).
 
 
 73
 Finally, KSP raises several challenges to the District Court's factual findings regarding whether the troopers mitigated their damages by looking for other work, whether the troopers could in fact have continued working after their fifty-fifth birthday, and whether some of the troopers who retired before their fifty-fifth birthday did so in reliance on the mandatory retirement policy. We conclude that the District Court's findings are not clearly erroneous.
 
 IV
 
 74
 For the reasons stated above, we AFFIRM the District Court in all respects except: we REVERSE the District Court's ruling denying EEOC's motion to toll the statute of limitations to April 6, 1978. Likewise, we REVERSE its ruling denying EEOC's motion to amend the complaint to add the names of three officers who retired after January 1, 1979. Finally, we REVERSE the District Court's ruling that prejudgment interest should begin to accrue as of January 1, 1987: prejudgment interest should begin during the back-pay period, as described herein.
 
 
 
 [1]
 On October 31, 1986, Congress amended section four of the Age Discrimination in Employment Act of 1967, 28 U.S.C. § 623, to make age a bona fide occupational qualification for law enforcement personnel whose duties "are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of a State...." This amendment became effective on January 1, 1987, but it preserved causes of action, such as the present case, that were in effect before that date
 
 
 [2]
 29 U.S.C. § 627 provides:
 Notices to be posted
 Every employer, employment agency, and labor organization shall post and keep posted in conspicuous places upon its premises a notice to be prepared or approved by the Equal Employment Opportunity Commission setting forth information as the Commission deems appropriate to effectuate the purposes of this chapter.
 
 
 [3]
 In its August 29, 1984 complaint, the EEOC alleged that KSP's ADEA violations had gone on "[s]ince at least January 1, 1979."
 
 
 [4]
 Officer Brown retired seven months prior to his mandatory retirement date to run for sheriff. Officer Herrell retired one month before his mandatory retirement date by using up his remaining vacation days. Officer McMullen retired on his mandatory retirement date, but he was predeceased by his wife, who was the only named beneficiary of his benefits. When McMullen died in 1985, the Retirement Board did not maintain his records because there were no beneficiaries to whom it owed money
 
 
 [5]
 The EEOC sought to add Officers Bailey, Baxter, Ginn, Kinman, Overstreet, and Turner. The District Court subsequently added Officers Ginn and Turner to the complaint. Kentucky's retirement policy required officers to retire on the first day of the month following their fifty-fifth birthday; because these two officers' birthdays were in December of 1978, their effective retirement date, January 1, 1979, was within the tolling period established by the Court
 
 
 [6]
 See supra note 3
 
 
 [7]
 We do not hold that if prejudgment interest is to be applied at all then, as a matter of law, it always must be applied to the full period of the back-pay award: the "when" of prejudgment interest is still a decision within the discretion of the District Court. We find an abuse of discretion here because the District Court misinterpreted the magistrate judge's recommendation as to when prejudgment interest should begin, and the magistrate judge, in turn, misinterpreted EEOC's recommendation on this subject
 
 
 [8]
 Again, the only difference is that EEOC should begin prejudgment interest on day one of year two, not three months into the first year as it had recommended earlier
 
 
 [9]
 We do note, however, that, for federal income tax purposes, troopers must include the back-pay awards in gross income. Commissioner of Internal Revenue v. Schleier, --- U.S. ----, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995)