Elaine A. KRISH, et al., Plaintiffs,

v.

CONNECTICUT EAR, NOSE & THROAT, SINUS & ALLERGY SPECIALISTS, P.C., Defendant.

Civil Action No. 3:08–CV–1015 (JCH).

United States District Court, D. Connecticut.

March 13, 2009.

Leonard A. McDermott, Naugatuck, CT, for Plaintiffs.

Dove A.E. Burns, Winget Spadafora & Schwartzberg, Stamford, CT, for Defendant.

## RULING RE: DEFENDANT'S MOTION TO DISMISS COUNT THREE OF PLAINTIFFS' AMENDED COMPLAINT (DOC. NO. 18)

JANET C. HALL, District Judge.

Plaintiffs Elaine A. Krish, Nancy Maxim, and Phyllis Angelicola bring claims against defendant Connecticut Ear, Nose & Throat, Sinus & Allergy Specialists, P.C. ("CENTSAS"), alleging unlawful discrimination on the basis of age in violation of the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, and the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a–60(a)(1). CENTSAS has moved to dismiss Count Three of plaintiffs' Amended Complaint, brought by plaintiff Phyllis Angelicola (Doc. No. 18).[1] The court grants defendants' Motion.

## I. FACTUAL BACKGROUND [2]

Plaintiff Phyllis Angelicola was employed by defendant CENTSAS from August 2002 through May 11, 2006. She had an excellent work record and no disciplinary history. Angelicola was given a letter on or about May 1, 2006, informing her that her employment was terminated as of May 11, 2006. The letter stated that Angelicola was being terminated because her hourly rate was much higher than that of

---

1. While the subject matter of defendant's Motion, defendant's special defense of the statute of limitations, is not ordinarily considered on a Motion to Dismiss, the court may address the issue when the dates in question are undisputed. *See, e.g., Mercado v. Ritz–Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 48–49 (1st Cir.2005) (addressing whether plaintiffs have stated a threshold case for equitable tolling sufficient to survive a motion to dismiss).

2. On a Motion to Dismiss, the court takes the allegations of the complaint as true, and construes them in a manner favorable to the pleader. Because defendants have not sought to dismiss the claims of plaintiffs Krish and Maxim, this background section focuses primarily on plaintiff Angelicola's claims.

other employees. At the time of her termination, Angelicola was paid $18.75 per hour while new employees were paid approximately $8 per hour. The new employees were much younger than Angelicola, and Angelicola alleges that CENTSAS discriminated against her on the basis of her age in terminating her employment.

On or about March 28, 2007, CENTSAS discharged Elaine Krish and Nancy Maxim, the other plaintiffs in this case. Ms. Krish and Ms. Maxim were replaced by younger workers.

Angelicola alleges that CENTSAS, acting through its agents, engaged in a continuing discriminatory policy or practice by systematically firing older employees with higher pay rates and replacing them with younger workers at lower rates of pay. Angelicola was not aware of this discriminatory policy or practice until she learned that her former co-workers had also been discharged.

On or about December 19, 2007, more than 300 days after her discharge, Angelicola filed a complaint with the EEOC. As a result of CENTSAS's conduct, Angelicola has suffered damages.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss, the court takes the allegations of the complaint as true, and construes them in a manner favorable to the pleader. *Hoover v. Ronwin,* 466 U.S. 558, 587, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984); *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir. 1998). A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests only the adequacy of the complaint. *United States v. City of New York,* 359 F.3d 83, 87 (2d Cir.2004). Dismissal is warranted if the facts as alleged are insufficient to "raise a right to relief above the speculative level." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007); *see also Boykin v. KeyCorp,* 521

F.3d 202, 213–14 (2d Cir.2008) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiff's pleading obligations. *Amron v. Morgan Stanley Inv. Advisors Inc.,* 464 F.3d 338, 344 (2d Cir.2006). Instead, plaintiffs are obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007).

## III. DISCUSSION

### A. Statute of Limitations

CENTSAS has moved to dismiss Count Three on the grounds that Angelicola's claim is time-barred. In states with state anti-discrimination laws and enforcement agencies, such as Connecticut, a plaintiff seeking to recover under the ADEA must file a discrimination charge with the EEOC "within 300 days of the occurrence of the allegedly unlawful employment practice." *Kassner v. 2nd Avenue Delicatessen Inc.,* 496 F.3d 229, 237–38 (2d Cir.2007); *see Paneccasio v. Unisource Worldwide, Inc.,* 532 F.3d 101, 112 (2d Cir.2008). The ADEA time period "ordinarily starts running upon the employer's commission of a discriminatory act." *Paneccasio,* 532 F.3d at 112. "The time period begins on the date the employee receives notice of his discharge, not necessarily on the date of termination." *Dillman v. Combustion Eng'g, Inc.,* 784 F.2d 57, 59 (2d Cir.1986). It is undisputed that Angelicola's EEOC complaint was filed more than 300 days after Angelicola received notice of the alleged discriminatory act—Angelicola's termination of employment. *See* Am. Compl. ¶ 37.

Courts have recognized two doctrines under which discriminatory acts taking place more than 300 days before the filing

of an EEOC charge might nevertheless be actionable: the equitable tolling and continuing violations doctrines. The court will now evaluate whether Angelicola's claim might survive under either doctrine.

### 1. *Equitable Tolling*

■■■ "Equitable tolling is only appropriate in rare and exceptional circumstances...." *Paneccasio,* 532 F.3d at 112. These rare circumstances include if "the employee was actively misled by [her] employer," or if she "was prevented in some extraordinary way from exercising [her] rights." *Id.* (quoting *Miller v. Int'l Tel. & Tel. Corp.,* 755 F.2d 20, 24 (2d Cir.1985)). Though the concept of equitable tolling is grounded in the notion that a statute of limitations should not run against a plaintiff who lacks actual knowledge of the facts that comprise her cause of action, the statute of limitations period is generally not tolled "pending the employee's realization that the conduct was discriminatory." *Cerbone v. Int'l Ladies' Garment Workers' Union,* 768 F.2d 45, 48–49 (2d Cir.1985) (quoting *Miller,* 755 F.2d at 24). For equitable tolling to apply, ordinarily the "employer's misleading conduct [must be] responsible for the employee's unawareness of [her] cause of action." *Dillman,* 784 F.2d at 60. That is, to avoid dismissal on the grounds of equitable tolling, Angelicola must allege facts from which the court could conclude that she "was unaware of [her] cause of action under the ADEA because of [the employer's] misleading conduct." *Id.*

■■■ Angelicola has alleged that she was unaware that she had been discriminated against due to her age until after two coworkers were discharged on March 28, 2007. Am. Compl. ¶ 36. In her response to CENTSAS's Motion to Dismiss, Angelicola claims that her employer engaged in misleading conduct "in a number of ways:" by failing to post workplace notices about employees' rights concerning age discrimi-

nation, by trying to convince Angelicola that "she wasn't really an employee" and so did not have the same rights as an employee, and by having a "fiduciary relationship with Stone Academy and systematically [bringing] in younger interns to replace older workers at a much lower pay rate." Pl.'s Mem. in Opp'n at 7.

■■■ Angelicola did not allege in her Amended Complaint that her employer failed to post workplace notices about employees' rights and cannot add this allegation in a response to the Motion to Dismiss. But assuming that Angelicola had made such an allegation or the court were to permit her to amend her complaint to do so, this allegation would not be sufficient to equitably toll the statute of limitations.

The circuits are split on whether an employer's failure to post notices, without more, warrants equitable tolling. *Compare Mercado v. Ritz–Carlton San Juan Hotel, Spa & Casino,* 410 F.3d 41, 48 (1st Cir.2005) ("[W]here appellants have asserted that no informational notices were posted and that they had no knowledge of their legal rights until informed by their attorney, they have met the threshold requirements for avoiding dismissal of their Title VII suit."); *EEOC v. Ky. State Police Dep't,* 80 F.3d 1086, 1096 (6th Cir. 1996) ("If an employer fails to ... post[ ] the required ADEA notices, 'the charge-filing period will not begin to run until the employee either retains an attorney or acquires actual knowledge of his rights under the ADEA.'") (citation omitted); *Callowhill v. Allen–Sherman–Hoff Co.,* 832 F.2d 269, 272 (3rd Cir.1987) ("[A]n employer's neglect to post the notice ... will toll the running of the period for filing the administrative charges, at least until the 'aggrieved person seeks out an attorney or acquires actual knowledge of his rights under the [ADEA].'"), with *Wilkerson v.*

*Siegfried Ins. Agency, Inc.,* 683 F.2d 344, 347 (10th Cir.1982) ("[T]he simple failure to post ... notices, without intent to actively mislead the plaintiff respecting the cause of action, does not extend the time within which a claimant must file his or her discrimination charge."). The Second Circuit has not definitively addressed this question. In *Smith v. American President Lines, Ltd.,* the court found equitable tolling not warranted where the failure to post notices did not prevent the plaintiff from learning about the EEOC or administrative procedures. 571 F.2d 102, 109–10 (2d Cir.1978). In *Dillman v. Combustion Engineering,* the court suggested that posting notices "may be sufficient to defeat an employee's equitable tolling claim," but did not address the converse question at issue here—whether the failure to post notices warrants equitable tolling. 784 F.2d at 60.

■ The Second Circuit's caselaw on equitable tolling makes clear, however, that for equitable tolling to apply, the employer must prevent the employee in some extraordinary way from exercising her rights, or the employee must be actively misled by his employer and that conduct must be responsible for making the employee unaware of her ADEA rights. *Dillman,* 784 F.2d at 60; *Miller,* 755 F.2d at 24. Even assuming that Angelicola had alleged a failure to post notices in the Amended Complaint, Angelicola has not plausibly alleged facts in support of the claim that CENTSAS actively misled Angelicola about her ADEA rights simply by failing to post notices.

Angelicola's claims that her employer sought to convince her that "she wasn't really an employee" similarly appear in plaintiffs' brief but not in the Amended Complaint. Even assuming these allegations were contained in the Amended Complaint, Angelicola has not alleged how her employer referring to her as a "Independent Floater / Per Diem employee," and her employer informing her that her terms of employment did not entitle her to employee benefits offered by the company, actively misled her about her *statutory* rights as an employee under the ADEA. Angelicola has not alleged that she was actively misled by her employer as to the nature of her termination, her replacement by younger workers, or her rights under the ADEA. In fact, Angelicola was specifically told that she was being discharged because her rate of pay was higher than that of other employees. Am. Compl. at ¶ 30. Finally, Angelicola has not articulated the way in which CENTSAS's relationship with Stone Academy caused Angelicola to be misled or otherwise prevented from exercising her rights. More specific allegations of the means by which Angelicola was actively misled or prevented in some extraordinary way by her employer from exercising her rights would be necessary to make out a plausible claim for equitable tolling.

### 2. *Continuing Violation*

■ "The continuing violation exception applies when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests." *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996). The Second Circuit has held that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation," unless "there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998) (citation and internal quotation marks omitted). "If a continuing violation is shown, a plaintiff is entitled to have a

court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001) (citations and internal quotation marks omitted).

In the case of *National Railroad Passenger Corp. v. Morgan,* which postdates the above-cited decisions, the Supreme Court held that discrete discriminatory acts, such as a termination, are not actionable if they occurred more than 300 days before the filing of an EEOC charge, "even when they are related to acts alleged in timely filed charges." *See* 536 U.S. 101, 113–14, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The *Morgan* Court reversed the lower court's holding that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." *Morgan,* 536 U.S. at 114, 122 S.Ct. 2061 (citing *Morgan v. National R.R. Passenger Corp.,* 232 F.3d 1008, 1015 (9th Cir.2000)). Morgan insists that:

> A discrete retaliatory or discriminatory act "occurred" on the day that it "happened." A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.... There is simply no indication that the [statute's use of the] term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing.

536 U.S. at 110–111, 122 S.Ct. 2061. The strong language used by the *Morgan* Court suggests that the continuing violations doctrine may not have survived that decision, though neither the Supreme Court nor the Second Circuit has defini-

tively addressed this question in the years since *Morgan.* "Continuing violation" claims in the context of a pattern or practice claim may still be permissible; in a footnote, the *Morgan* court declared that, "We have no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here." *Morgan,* 536 U.S. at 115 n. 9, 122 S.Ct. 2061.

■ In her Amended Complaint, Angelicola alleges that CENTSAS systematically fired older employees with higher pay rates, and replaced them with younger "interns" at lower pay rates. Angelicola alleges that CENTSAS fired her, as well as two co-workers, her co-plaintiffs in this action, pursuant to this discriminatory policy or practice. Finally, Angelicola alleges that she filed her EEOC charge within 300 days of the last alleged discriminatory act pursuant to the allegedly discriminatory policy or practice, the termination of her co-plaintiffs' employment on March 28, 2007. In her Response to CENTSAS's Motion to Dismiss, Angelicola argues that all three plaintiffs were discharged by CENTSAS under a policy or practice that replaced older, higher paid workers, with younger, inexperienced, and lower paid interns.

CENTSAS relies upon *Morgan* for the proposition that discrete discriminatory acts are not actionable if time-barred. It also contends that the Second Circuit has only found continuing violations in cases of a pattern and practice of discrimination suffered by that same plaintiff. *See* Def.'s Reply to Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss at 3–4 ("Def.'s Reply").

Unfortunately for Angelicola, the facts of her individual claim fall squarely within *Morgan*'s holding.[3] *Morgan* insists that

---

**3.** The court will discuss separately, *infra,* whether Count Three adequately alleges a "pattern and practice" claim.

discrete discriminatory acts, like the termination at issue here, are not actionable outside the statute of limitations period, even when those acts are related to or part of a broader set of related discrete acts, some of which fall within the statute of limitations period. Angelicola seeks to avoid *Morgan*'s decree by framing her claim as being part of a practice of ongoing discrimination. But as *Morgan* states, "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing." 536 U.S. at 111, 122 S.Ct. 2061. Angelicola's argument, in short, was rejected by *Morgan*. Accordingly, to the extent it seeks to allege an individual claim on behalf of Angelicola, Count Three is dismissed as time-barred.[4]

## B. Pattern or Practice Claim

█ Although *Morgan* held that discrete discriminatory acts such as Angelicola's termination are not actionable in an individual claim, it declined to consider whether its holding would apply to pattern or practice claims. *See* 536 U.S. at 113–14, 115 n. 9, 122 S.Ct. 2061. The court must therefore consider whether Count Three's characterization of defendant's practices as "systematic[ ]" and a "continuing violation of discriminatory policies or practices that are related to bthe [sic] circumstances of her discharge" suffice to allege a pattern or practice claim. Am. Compl. ¶¶ 34, 39.

█ The Supreme Court has explained the proof necessary to establish a pattern or practice claim:

> Proving isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case of

a pattern or practice of discrimination; rather it must be established by a preponderance of the evidence that '[age] discrimination was the company's standard operating procedure—the regular rather than the unusual practice.' … The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while 'at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decision making.'

*Cooper v. Fed. Reserve Bank of Richmond,* 467 U.S. 867, 875–76, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) (quoting *Teamsters v. United States,* 431 U.S. 324, 336, 360 n. 46, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). As the case law makes clear, the nature of proof that a plaintiff must offer in a pattern and practice claim differs from that in an individual claim. *See Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 158 & n. 5 (2d Cir.2001). Typically, a plaintiff bringing a pattern or practice claim marshals evidence of a concrete policy and/or statistical evidence in support of the claim, along with anecdotal evidence to support that claim. *Id.* at 158. For example, in *Teamsters,* the court upheld a pattern and practice claim where plaintiffs offered compelling statistical evidence, buttressed by oral testimony of forty specific instances of discrimination. 431 U.S. at 337–43, 97 S.Ct. 1843. In *Cooper,* on the other hand, the Supreme Court agreed with the lower court's conclusion

---

4. Even in the heyday of the "continuing violations" doctrine, it is not clear that Angelicola's claim would have been actionable on the grounds that it was a continuing violation. *See Miller,* 755 F.2d at 25 ("[S]everal courts have held that an employee who has been discharged pursuant to a discriminatory policy may not take advantage of later discriminatory acts against other employees for the purpose of postponing the running of the statutory period as to [her] on a continuing violation theory.").

that evidence of "two or three instances of discrimination" were not "sufficient to establish a general policy." 467 U.S. at 878–79 & n. 11, 104 S.Ct. 2794. Similarly, in *Ste. Marie v. Eastern Railroad Ass'n,* the Second Circuit found that a pattern or practice claim was not established where plaintiffs demonstrated several individual incidents of discrimination but "relevant statistics [were] lacking." 650 F.2d 395, 405–06 (1981). It declared that "more than two acts will ordinarily be required." *Id.* at 406. It noted, however, that "[i]f there were evidence that a policy of discrimination had been adopted, perhaps two or even one confirmatory act would be enough." *Id.*

Turning to plaintiffs' claims, Count Three of plaintiffs' Amended Complaint alleges that CENTSAS, "through its agents, was systematically firing older employees with higher pay rates than the newly hired younger interns from Stone Academy." Am. Compl. ¶ 34. Plaintiffs also allege that Angelicola's firing was done in violation of "discriminatory policies or practices that are related to bthe [sic] circumstances of her discharge." Am. Compl. ¶ 39. Although on a motion to dismiss the court takes the complaint's allegations as true, a plaintiff is obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal,* 490 F.3d at 157–58. Plaintiffs have not alleged that a formal policy of discrimination was adopted. While they have alleged three instances of age discrimination that follow a similar pattern, under *Ste. Marie* and *Cooper,* allegations of a few confirmatory instances alone do not make out a pattern or practice claim. Therefore, plaintiff's allegations of systematic firing, even supported by allegations of three confirmatory instances, without more, does not render plausible plaintiffs' allegations of a pattern or practice claim.

Accordingly, to the extent it seeks to allege a pattern or practice claim, the remainder of Count Three is dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss Count Three (Doc. No. 18) is **GRANTED.** Plaintiff Angelicola may move within 30 days for leave to amend the complaint to replead her individual claims,[5] and plaintiffs may move within 30 days for leave to amend their complaint to replead a pattern or practice claims.[6] A proposed amended complaint should be attached to any motion for leave to replead.

**SO ORDERED.**

---

5. Angelicola has already had one opportunity to replead her individual claim. However, the court will permit her a second opportunity to replead her individual claim.

6. If plaintiffs successfully prove a pattern or practice claim, then Angelicola, and any other individuals harmed, may be able to recover in the remedy phase of that claim as a member of the class of individuals harmed. *See Robinson,* 267 F.3d at 158–59 (distinguishing between the liability and remedial phases of pattern or practice disparate treatment claims). Because it would be premature to do so, at this time the court declines to address the question of whether Angelicola might be able to recover as part of a class of individuals harmed by defendants' practices despite the fact that her individual claim may be time-barred. *Cf. Cooper,* 467 U.S. at 873–78, 104 S.Ct. 2794 (explaining that the existence of valid individual claims and a valid pattern or practice claim are separate questions).