Laurie REED, Plaintiff,

v.

**CRACKER BARREL OLD COUNTRY STORE, INC., d/b/a Cracker Barrel Old Country Store, Defendant.**

No. 2–99–0002.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 7, 2001.

David A. Burkhalter, II, Kirk J. Angel, Ronald A. Rayson, Burkhalter & Associates, P.C., Knoxville, TN, for plaintiff.

John Thomas Feeney, III, Feeney & Murray, PLLC, Nashville, TN, for defendant.

### MEMORANDUM AND ORDER

TRAUGER, District Judge.

Pending before the court are the plaintiff's motions for prejudgment interest (Docket No. 116) and for costs and attorney's fees (Docket No. 111). For the reasons stated herein, the plaintiff's motion for prejudgment interest is **GRANTED,** and the plaintiff's motion for costs and attorney's fees is **GRANTED** in part and **DENIED** in part.

This matter came before a jury on December 11–12, 2000, on claims of hostile environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and retaliation in violation of Title VII and the Tennessee Human Rights Act, T.C.A. § 4–21–101 *et seq.* (1998). The jury returned a verdict in favor of the defendant on the claim of sexual harassment and in favor of the plaintiff on the claims of retaliation. (Docket No. 104) The jury found that the plaintiff had been sexually harassed at her workplace but found that the defendant had proved each of the elements of its affirmative defense to liability. The jury awarded the plaintiff $10,000 in punitive damages on her retaliation claims. Pursuant to an agreed pre-trial order, the court reserved the issue of back pay until after trial. (Docket No. 93 at 4) On the plaintiff's post-trial motion, the court awarded the plaintiff $2,500 in back pay as compensatory damages. (Docket Nos. 104 & 109)

On January 17, 2001, the court entered judgment in favor of the plaintiff on her claims of retaliation and awarded her $10,000 in punitive damages, $2,500 in back pay, and her costs. (Docket No. 110) The

plaintiff subsequently filed motions for an award of costs in the amount of $3,512.61, attorney's fees of $48,493.75, and prejudgment interest on the award of back pay. (Docket Nos. 111 & 116). The defendant has filed responses to the motion for costs and attorney's fees (Docket Nos. 126 & 128) but has failed to respond to the motion for prejudgment interest.

## I. ANALYSIS

### A. PREVAILING PARTY

■ As an initial matter, the defendant argues that the plaintiff is not the "prevailing party" and is not entitled to recover any costs or fees on this action. The defendant bases this argument on these facts: (1) the plaintiff's state law claim of sexual harassment and Title VII claim of *quid pro quo* sexual harassment were dismissed by the court on a motion for summary judgment; (2) the plaintiff did not prevail on her Title VII claim of hostile environment sexual harassment at trial; and (3) the plaintiff did not receive any compensatory damages from the jury on her state and federal retaliation claims.

In *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Supreme Court stated, "Under our generous formulation of the term, plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." 506 U.S. at 109, 113 S.Ct. at 572 (internal quotation marks omitted). This does not mean that the party must succeed on all of its claims or on any particular claim, only that the "plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989);

*see also Krichinsky v. Knox Co. Schs.,* 963 F.2d 847, 850 (6th Cir.1992).

In *Farrar,* the Court found that "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement." 506 U.S. at 111, 113 S.Ct. at 573 (internal citations omitted); *see also Wooldridge v. Marlene Indus. Corp.,* 898 F.2d 1169, 1174 (6th Cir. 1990) (finding that, in order for the plaintiff to be a prevailing party, "there must be some actual benefit to the plaintiff either in terms of monetary damages, injunctive relief, or a voluntary change in a defendant's conduct"). The Court found that a plaintiff who recovers only nominal damages is still a prevailing party because he

> may demand payment for nominal damages no less than he may demand payment for millions of dollars in compensatory damages. A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay.

*Farrar,* 506 U.S. at 113, 113 S.Ct. at 574.

Although the plaintiff did not succeed on all of her claims, the jury did return a verdict in her favor on her state and federal claims of retaliation. Pursuant to an agreed pre-trial order, the court reserved the issue of back pay and, subsequent to trial, awarded the plaintiff $2,500 in back pay as compensatory damages. Clearly, $2,500 is more than nominal damages and has forced the defendant to modify its behavior toward the plaintiff. The retaliation claims were a significant issue in this case, and the plaintiff is the prevailing party by virtue of her success on those

claims. Thus, the plaintiff is entitled to receive costs and reasonable attorney's fees under the applicable laws.

## B. BILL OF COSTS

 The plaintiff seeks taxable costs in the amount of $3,512.61. (Docket No. 122) The defendant objects to $1,350.94 of this amount. The Clerk of the Court awarded the plaintiff's requested taxable costs in full. Pursuant to Federal Rule of Civil Procedure 54(d),

> costs[1] other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs .... Such costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

Although the matter of costs is initially the responsibility of the clerk of the court, the district court may, upon the filing of a timely motion, review such action taken by the clerk.[2] In so doing, the district court should make a *de novo* determination of the issue. *See Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 233, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964) (holding that it was the district court judge's "responsibility to decide the costs question himself"), *disapproved on other grounds, Crawford*

*Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *In re Paoli Railroad Yard PCB Litigation,* 221 F.3d 449, 461 (3d Cir.2000); 10 Moore's FEDERAL PRACTICE § 54.100[4][a] (Matthew Bender 3d ed.). If costs are awarded, specific factual findings must be made in support of the award. *See Phelan v. Bell,* 8 F.3d 369, 375 (6th Cir.1993).

The language of Rule 54(d) "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *White & White, Inc. v. American Hospital Supply Corp.,* 786 F.2d 728, 730 (6th Cir.1986). Thus, "it is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption" in favor of awarding costs to the prevailing party. *Lichter Foundation, Inc. v. Welch,* 269 F.2d 142, 146 (6th Cir.1959). The court, in exercising its discretion, is to determine "the equity of awarding costs 'under all the circumstances of the case.'" *White & White,* 786 F.2d at 733 (quoting *Lichter,* 269 F.2d at 146).

The Sixth Circuit has identified certain circumstances under which a denial of costs is a proper exercise of discretion, including cases where the

---

1. The term "costs" in Rule 54(d) is defined in 28 U.S.C. § 1920 which provides in relevant part that

 "[a] judge or clerk of any court of the United States may tax as costs the following:
 (1) Fees of the clerk and marshal;
 (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
 (3) Fees and disbursements for printing and witnesses;
 (4) Fees for exemplification and copies of papers necessarily obtained for use in the case ...."

2. As the defendant concedes, the defendant's objections were not presented to the Clerk by the time and date specified for the presentation of the bill of costs. (Docket No. 129) Under the Local Rules, the Clerk will grant the prevailing party's motion in full when there are no objections presented by the opposing party. Local Rule 13(d). Further, the defendant did not file exceptions to this award with the Clerk, as specified in the Local Rules, but appeals the award directly to this court. Although the court could deny review of the costs on the ground that the defendant has waived any objection, the plaintiff did not raise this argument and does not appear to object to this court's reviewing the award. Therefore, in spite of the defendant's procedural errors, the court will review the defendant's objections to the bill of costs.

taxable expenditures by the prevailing party are "unnecessary or unreasonably large", cases where the prevailing party should be penalized for unnecessarily prolonging trial or for injecting unmeritorious issues, cases where the prevailing party's recovery is so insignificant that the judgment amounts to a victory for the defendant, and cases that are "close and difficult".

*Id.* (internal citations omitted).

In addition, the Sixth Circuit has identified certain factors that should not be taken into account when deciding whether the award of costs should be denied. For instance, the court should not consider the size of the recovery by the successful party or whether the prevailing party is able to pay its own costs. *Id.* (citing *Lewis v. Pennington,* 400 F.2d 806, 819 (6th Cir. 1968)). Although a court may consider the good faith of the losing party in bringing the action, this factor alone cannot be a proper basis for denying costs to the prevailing party. *Id.* at 730–31. *See also Goostree v. State of Tennessee,* 796 F.2d 854, 864 (6th Cir.1986) (reversing district court's denial of costs on the basis that the plaintiff's case was not frivolous). Similarly, a court may consider "the propriety with which the losing party conducts the litigation" as a relevant but not a sufficient reason for denying costs. *Id.*

Here the defendant has made the following specific objections to the costs taxed against it:

(1) $30.00 for Certificates of Good Standing for two of the plaintiff's attorneys;

(2) $82.50 for fees of court reporter and transcript billed by Truesdel & Rusk;

(3) $632.00 for fees of court reporter and transcript billed by Margaret Welker & Associates;

(4) $64.50 for fees of court reporter and transcript billed by Stinson Reporting Service;

(5) $420.20 for copy charges; and

(6) $121.74 for witness fees for witness Robin Browning.

(Docket No. 128)

The plaintiff has admitted that the witness fee for Robin Browning was recovered and that this cost is inappropriate. (Docket No. 131 at 3) The court will subtract $121.74 from the taxable costs.

■ With regard to the Certificates of Good Standing, the defendant argues that this is "a cost of being authorized to practice law in this court and is not specific to this case." (Docket No. 128 at 2) The defendant also notes that this case was initially filed in this court so that the need for this certification was not based on any actions by the defendant. The plaintiff responds that none of her lawyers were members of the bar of this court at the time the complaint was filed and it was necessary for counsel to be admitted *pro hac vice,* which required Certificates of Good Standing.

The plaintiff has provided no authority to support the argument that a Certificate of Good Standing is a necessary cost of this litigation. The plaintiff certainly had the ability to retain counsel who were members of the bar of this court and chose not to do so. The court is persuaded that this is not a cost specific to this case but is instead a cost of practicing law generally and is not recoverable as the taxable cost of a prevailing party. The court will subtract $30.00 from the costs assessed against the defendant.

With regard to the transcript and court reporter charges, the defendant objected on the basis that these charges were not adequately itemized and the plaintiff did not establish a basis for these expenses. (Docket No. 128 at 2) In addition, the defendant argues that the Stinson Reporting Services charge related to the deposi-

tion of Robin Browning, who was not called to testify and whose deposition was not used at trial. The deposition was not used in pre-trial proceedings and was never submitted to the court.

In response to these objections, the plaintiff has submitted copies of invoices from each of the reporting services which lists the depositions taken and the charges incurred. These invoices are comparable to those submitted in support of the plaintiff's other court reporter costs, to which the defendant does not object. The court finds that the defendant's objection to the charges of Treusdel & Rusk and of Margaret Welker & Associates has been mooted by the plaintiff's submission of the relevant invoices. In addition, these charges are reasonable and relate to witnesses who testified at trial or who otherwise assisted the parties in preparing the case. In *Sales v. Marshall*, 873 F.2d 115 (6th Cir.1989), the Sixth Circuit stated that, "[o]rdinarily, the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party. Necessity is determined as of the time of taking, and the fact that a deposition is not actually used at trial is not controlling." *Sales*, 873 F.2d at 120.

*Sales* applies equally to the deposition of Robin Browning. Ms. Browning was listed by both the plaintiff and the defendant as a potential witness regarding the plaintiff's mental health. (Docket Nos. 61 & 86) The defendant deposed Ms. Browning, although she did not testify at trial for either party. The plaintiff claimed that she was sexually harassed and suffered stress and other emotional problems as a result of the harassment. One of the elements of the plaintiff's *prima facie* claim of sexual harassment was her subjective belief that she was being harassed, and the emotional or psychological effect of the alleged harassment is often relevant to that issue. Thus, the testimony of Ms. Browning was reasonably necessary at the time that the defendant deposed her, even though neither party used that deposition at trial. The costs to the plaintiff of securing a copy of this deposition are recoverable.

Finally, the defendant has objected to the plaintiff's charge of $420.20 for copies on the ground that the plaintiff has not provided a "meaningful itemization" or properly described the charges. (Docket No. 128 at 2–3) No objection is made to the rate of $.20 per page. In response, the plaintiff states only that

> [the attorney's] office maintains records of the number of copies made for each client. The flat charge is .20 [dollars] per page .... The receipt provided to the Clerk clearly indicates the cost of the copies at $420.20. As such, this is a properly claimed cost.

(Docket No. 131 at 3)

Copying costs are generally recoverable under 28 U.S.C. § 1920(4), which provides for the recovery of "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." *See also National Truck Equipment Ass'n v. National Highway Traffic Safety Administration*, 972 F.2d 669, 674 (6th Cir.1992). This total charge of $420.20 is reasonable, in fact modest, for a case that was pending for two years and went to trial. Copying charges will be allowed in full.

On review of the plaintiff's bill of costs and the defendant's objections thereto, the court finds that the plaintiff's taxable costs should be reduced by $151.74. The plaintiff's costs will be taxed to the defendant in the amount of $3,360.87.

## C. ATTORNEY'S FEES

The plaintiff has presented a request for attorney's fees under 42 U.S.C. § 2000e (2000) as a prevailing party in a Title VII

claim. The plaintiff had three attorneys working on this case—David Burkhalter, II, Ronald Rayson, and Kirk Angel, all of Burkhalter, Rayson & Associates, P.C. The plaintiff requests fees for Burkhalter in the amount of $4,781.25 for 21.25 hours of work at a rate of $225 per hour, fees for Rayson of $12,775.00 for 73 hours of work at a rate of $175.00 per hour, and fees for Angel of $30,937.50 for 247.5 hours of work at a rate of $125.00 per hour. (Docket No. 113, Joint Affidavit, para.8 at 9) In total, the plaintiff requests an award of fees in the amount of $48,493.75.

As the Supreme Court has stated, "the 'most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Webb v. Board of Educ. of Dyer Co., Tennessee*, 471 U.S. 234, 242, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). "There is a 'strong presumption' that this lodestar figure represents a reasonable fee." *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir.1995) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986)).

"The party seeking attorneys fees bears the burden of documenting [her] entitlement to the award," *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir.1999), and "should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *see also Wooldridge*, 898 F.2d at 1177. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

The court must also determine that the hours expended on the litigation were "reasonable." As the Supreme Court stated:

> The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.' S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. 'In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.' *Copeland v. Marshall*, 205 U.S.App. D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–40.

In determining the reasonable rate, the court should consider the prevailing market rate in this area for lawyers of comparable experience and expertise, regardless of whether the attorneys in the case primarily practice in the Middle District of Tennessee. As the Sixth Circuit has found, "hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir.1986).

After determining the lodestar amount, the court may adjust the fees upward or downward based on a number of considerations. Many of these factors were established by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), *abrogated on*

*other grounds, Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), and adopted by the Supreme Court in *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. As noted by the Sixth Circuit in *Reed,* the *Johnson* factors are:

(1) the time and labor required by a given case;

(2) the novelty and difficulty of the questions presented;

(3) the skill needed to perform the legal service properly;

(4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the 'undesireability' of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Reed,* 179 F.3d at 471 n. 3 (citing *Johnson,* 488 F.2d at 717–19). As the Supreme Court noted in *Hensley,* the *Johnson* factors may also be useful in determining the reasonable hourly rate. *See Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9.

■ The plaintiff has submitted a joint affidavit from the three attorneys who worked on her case, detailing the experience of each attorney. (Docket No. 113, Joint Affidavit) David Burkhalter, II, graduated from the University of Tennessee Law School in 1976 and was admitted to practice in the Tennessee courts the same year. *Id.,* para. 1. Burkhalter was admitted to the bar of the United States District Court for the Eastern District of Tennessee in 1977, to the bar of the Sixth Circuit Court of Appeals in 1982, and to the bar of

the Supreme Court of the United States in 1982. He is certified by the National Board of Trial Advocacy and certified as a "Civil Trial Specialist" by the Tennessee Commission on Continuing Legal Education and Specialization. He has extensive experience serving as lead counsel in employment-related suits, lecturing on employment-related topics, and consulting with other attorneys in employment-related cases. Burkhalter served mainly as a supervisor for associate counsel Kirk Angel during the preliminary phases of this case and seeks compensation for 21.25 hours of work at a rate of $225 per hour. *Id.,* paras. 2, 8.

■ Ronald Rayson, who served as lead trial counsel in this case, graduated from the University of Tennessee College of Law in 1988 and was admitted to practice before the courts of Tennessee the same year. *Id.,* para. 3. Rayson is also admitted to the bar of the United States District Court for the Eastern District of Tennessee. Rayson seeks compensation for 73 hours of work on this case at a rate of $175 per hour. *Id.,* paras. 4, 8.

■ Kirk Angel, who was associate counsel in this case and handled the majority of the pre-trial matters, graduated from the University of Tennessee Law School in 1997 and was admitted to practice before the courts of Tennessee the same year. *Id.,* para. 5. Angel was admitted to practice before the United States District Court for the Eastern District of Tennessee in 1998 and before the United States District Court for the Middle District of Tennessee in 1999. He seeks compensation for 247.5 hours of work at a rate of $125 per hour. *Id.,* paras. 6, 8.

### 1. Reasonable Rates

In calculating the lodestar amount, the court must determine a reasonable rate for each of these attorney's services in this case. The plaintiff has submitted affida-

vits to support the rates requested by Burkhalter, Rayson, and Angel as reasonable for this geographical area for this type of litigation. (Docket No. 113, Joint Affidavit; Docket No. 119, Affidavit of Margaret L. Behm; Docket No. 121, Affidavit of George E. Barrett) In the court's own experience, these are reasonable rates for a Title VII case in the Middle District of Tennessee. Although the defendant objects to the rates requested by the plaintiff, it has not presented any evidence to contradict the plaintiff's affidavits or to indicate that these rates are not reasonable for this type of litigation.[3] On review of the record and in light of the relative experience of each of the plaintiff's attorneys, the court finds that the rates requested by the plaintiff are reasonable.

### 2. Hours Reasonably Expended

■ With regard to the number of hours reasonably spent on this litigation, the plaintiff has submitted a "reconstruction" of the time spent by each attorney on this case, indicating generally the nature of the work done during each time period. (Docket No. 113, Joint Affidavit, para. 8) The defendant objects to a number of these entries as vague, duplicative, or unnecessary. The defendant also argues that several of the entries relate solely to either the plaintiff's sexual harassment claim or the plaintiff's request for compensatory damages, on neither of which did the plaintiff prevail at trial.

### a. Vague, Duplicative, or Unnecessary Entries

■ The defendant objects to 4 hours and 15 minutes[4] of Angel's time spent writing sixteen (16) letters that were identified generally as "Letter to Feeney," "Letter to Murray," or "Letter to Feeney and Murray." (Docket No. 126 at 3–5) John Thomas Feeney and Lee Anne Murray served as defense counsel in this matter. The defendant claims that these entries are too vague for the court to determine whether they are reasonable. In response, the plaintiff claims that these letters were part of the confidential settlement negotiations between the parties. (Docket No. 130 at 2 n. 1) The plaintiff has offered to submit copies of those letters to the court, but that is not necessary. Sixteen letters in an eighteen (18) month period where counsel is attempting to reach a settlement between the parties is not unreasonable. The defendant's objection to these entries as vague is overruled.

■ The defendant also objects to 45 minutes of Angel's time spent drafting three (3) letters to the plaintiff, listed only as "Letter to Client," as too vague to be

---

**3.** The defendant submitted affidavits from the its attorneys regarding the rate they charged the defendant in this case. However, the risk taken by the defendant's attorneys is not comparable to that taken by the plaintiff's attorneys, and, as the plaintiff argues, the defense attorneys have represented the defendant in a number of matters. In addition, the defendant's attorneys' qualifications and years of experience do not parallel those of all of the plaintiff's attorneys, preventing a direct comparison of rates.

The defendant has also submitted a copy of an affidavit from Thomas Feeney, one of the defendant's attorneys, that was previously submitted to a court in support of a fee application in another matter. Although somewhat unclear, the case appears to have involved option contracts and civil theft claims. These causes of action are not comparable to a Title VII claim, and the rate charged in that action does not establish a reasonable rate for plaintiff's attorneys in a civil rights action.

**4.** The plaintiff's attorneys' time entries were listed in terms of hours and minutes, in intervals of fifteen (15) minutes. (Docket No. 113, Joint Affidavit, para. 8) The defendant transposed these entries into the more common tenths of hours. (Docket No. 126) For the purposes of review, the court will rely on the plaintiff's system and will state the hours and minutes in this manner.

reasonably compensable. (Docket No. 126 at 3–4) The plaintiff responds that these letters were either in reference to the settlement negotiations or otherwise contain information protected by the attorney-client privilege. (Docket No. 130 at 2 n. 1) Again, the plaintiff offers to submit these letters to the court, but the court finds that review of these letters is unnecessary. Three letters to a client during the preparation of a civil rights case and in relation to settlement negotiations is entirely reasonable. The defendant's objection to these entries is overruled.

■ On both April 26, 2000 and June 27, 2000, the plaintiff has listed that Angel twice spent 15 minutes drafting letters to defense counsel on the same day. (Docket No. 113, Joint Affidavit, para. 8 at 5–6) Thus, the plaintiff seeks compensation for 1 hour of time spent drafting four letters on the two days. The defendant objects to these entries as vague and duplicative, but the defendant does not offer any evidence to indicate that its counsel received only one letter for each of the respective dates. It is neither unreasonable nor unusual for an attorney to draft multiple letters in a single day in an actively ongoing case. The defendant's objections to these entries are overruled.

The defendant also objects to the following entries as vague:

| ATTY | DATE | DESCRIPTION | TIME |
|------|------|-------------|------|
| Burkhalter | 6/11/98 | Client interview, review file and research | 2:30 |
| Angel | 5/2/00 | Deposition Preparation | 4:45 |
| Angel | 5/11/00 | Deposition Preparation | 1:00 |
| Burkhalter | 5/15/00 | Discuss case with KJA | 0:15 |
| Burkhalter | 5/26/00 | Meeting with Reed | 0:30 |
| Burkhalter | 6/11/00 | Meeting with Reed | 0:30 |
| Angel | 12/5/00 | Meet with Ronald A. Rayson and client | 1:30 |
| Angel | 12/8/00 | Work Release Dishman and Matthews | 0:30 |
| Burkhalter | 12/9/00 | Consult with DAB | 0:30 |

(Docket No. 126 at 3–5) The deposition preparation and work release entries are more appropriately considered with the court's later discussion of eliminating time spent solely on unsuccessful claims.

■ The June 11, 1998 entry of Burkhalter's meeting with the plaintiff, reviewing file, and researching is not vague and represents a reasonable amount of time devoted to these initial matters. The court similarly finds that the other references to meetings with the plaintiff are not vague and do not require further support. The plaintiff has represented that these meetings involved privileged communications between the plaintiff and her attorneys. These are reasonable time entries.

With regard to the May 15, 2000 entry by Burkhalter regarding discussing the case with Angel, the court finds that this is a reasonable charge. Burkhalter was serving as the supervising partner, while Angel was handling the majority of the discovery and pre-trial matters. This is not an unreasonable amount of time for a supervising attorney to meet with an associate handling discovery issues.

The December 9, 2000 entry, however, is not reasonable. Although the plaintiff did respond to the defendant's objection to this entry, she has failed to address the fact that Burkhalter is apparently charging for a conference with himself. Pre-

sumably, this is a typographical error, but because the plaintiff has the burden of justifying this entry and has failed to do so, it will be disallowed.

 The defendant objects to the following time entries as duplicative:

| ATTY | DATE | DESCRIPTION | TIME | DUPLICATIVE COMPARED TO |
|------|------|-------------|------|-------------------------|
| Burkhalter | 1/8/99 | Revise Complaint and transmittal to Court | 1:30 | 12/18/98 and 12/21/98 |
| Burkhalter | 7/1/99 | Review Defendant's Answers to Interrogatories and Document Request; discuss with KJA | 1:15 | 7/1/99 |
| Angel | 3/12/00 | Meet with Client; Deposition Preparation | 4:45 | 3/3/0 0 |
| Angel | 11/15/00 | Pre–Trial Order | 2:00 | 11/13/00 and 11/15/00 |

(Docket No. 126 at 3–5) With regard to the deposition preparation, both dates appear to relate to preparing the client to be deposed by the defendant. In a Title VII case of this nature, where much of the plaintiff's case relies on her own memory of events and testimony in deposition and at trial, it is not unreasonable for a competent attorney to spend a substantial amount of time preparing his or her client. Thus, Angel's meetings with the plaintiff on two occasions more than a week apart to prepare her for her deposition do not constitute duplication of effort.

 Both the Complaint and the Pretrial order are important documents which competent attorneys carefully draft and edit before submitting to the court. The court does not find it unreasonable for the plaintiff's attorney to have spent 4 hours and 30 minutes drafting and editing the Complaint prior to filing it with the court. Therefore, the January 8, 1999 revisions are not duplicative. Similarly, it is not unreasonable for the plaintiff's attorneys to spend 5 hours drafting and editing the Agreed Pre-trial Order. Most of that time was spent by Angel on the initial drafting and the revising of the document. Burkhalter spent only 30 minutes reviewing the document and discussing it with Angel. Again, this is not duplication of effort but a reasonable approach to the careful drafting of a significant document.

 Angel and Burkhalter spent a combined 2 hours and 15 minutes reviewing and discussing the defendant's answers to interrogatories and requests for document production. (Docket No. 113, Joint Affidavit, para. 8 at 3) It is reasonable for one attorney to have spent this amount of time on this project, and it is no less reasonable because the plaintiff's attorneys shared the task. The defendant's objection to these entries as duplicative is overruled.

The defendant objects to the following time entries as unnecessary:

| ATTY | DATE | DESCRIPTION | TIME | REASON UNNECESSARY |
|------|------|-------------|------|--------------------|
| Angel | 5/25/00 | Review of Robin Browning's Records | 0:30 | Mental Health Counselor did not assist in the prosecution of case and did not testify at trial |
| Angel | 8/16/00 | Review of Browning documents; Browning deposition (via telephone) | 1:15 | same as above |
| Angel | 8/21/00 | Draft and file Motion to Strike Affidavit and File Motion to Exceed Limit | 1:00 | Caused by counsel's failure to procure signature in a timely manner, and to heed court's page limit restrictions. |
| Angel | 9/11/00 | Draft and file Motion to Withdraw Plaintiff's Motion to Strike | 0:30 | Caused by counsel's failure to procure signature in a timely manner. |

(Docket No. 126 at 3–5) With regard to the entries related to Robin Browning, the court finds that this time is considered more properly in conjunction with the elimination of time related solely to the plaintiff's unsuccessful claims and will consider it in that section, *infra*. The entries relating to the motion to strike an affidavit are the result of plaintiff's counsel's failure to comply with the rules of this court in filing affidavits with original signatures. Because the attorneys created this work for themselves and it was not necessary to the case, the time related to these motions on August 21 and September 11, 2000 will be disallowed.

The August 21, 2000 entry, however, also includes work done on a motion to exceed the court's standard page limit for briefs in regard to the plaintiff's response to the defendant's motion for summary judgment. (Docket No. 49) The court granted this motion and on review finds that extended analysis was warranted by the complexity of the facts and issues presented in the motion for summary judgment. (Docket No. 50) Thus, the court finds that this motion was necessary to the plaintiff's presentation of her case. This entry is allowed. Because the August 21 entry is not allocated between the two motions, the most reasonable approach is to reduce the time by fifty percent (50%). That affords the same amount of time to the motion to strike, the motion to withdraw the motion to strike, and the motion to exceed the court's page limit.

In summary, one (1) hour will be deducted from Angel's time entries, and thirty (30) minutes will be deducted from Burkhalter's.

### b. Entries Related Solely to Sexual Harassment Claim

The defendant has also objected to a number of the plaintiff's attorneys' time entries as related only to the plaintiff's unsuccessful sexual harassment claim and,

therefore, not recoverable. (Docket No. 126 at 7) In addition, the court finds that several of the entries objected to on other grounds more properly are considered under this argument. The time entries in question are the following:

| ATTY | DATE | DESCRIPTION | TIME |
|---|---|---|---|
| Angel | 5/2/00 | Deposition Preparation | 4:45 |
| Angel | 5/3/00 | Travel to/from Crossville; Deposition of Cross; Cole; Kington; Robinson; Bryant; O'Rourke; Hartley | 10:30 |
| Angel | 5/11/00 | Deposition Preparation1:00 | |
| Angel | 5/12/00 | Deposition of Golliher; Travel to/from Crossville | 5:00 |
| Angel | 5/12/00 | Travel to/from Nashville; Deposition of Garry Garrison, Kim Tramel and Donna Golliher | 10:30 |
| Angel | 5/25/00 | Review of Robin Browning's Records | 0:30 |
| Angel | 8/14/00 | Conversation with Betts | 0:45 |
| Angel | 8/15/00 | Consult with client; draft and fax Betts Affidavit | 1:45 |
| Angel | 8/16/00 | Review of Browning documents; Browning deposition (via telephone) | 1:15 |
| Rayson | 11/30/00 | Review pleadings in preparation for deposition of Gretchen Betts; travel to and from Crossville; attend deposition of Gretchen Betts | 4:00 |
| Angel | 11/30/00 | Subpoena to Betts | 0:15 |
| Angel | 12/5/00 | Subpoenas to Browning, Donnan and Hartley | 0:45 |
| Angel | 12/8/00 | Work Release Dishman and Matthews | 0:30 |

In *Hensley*, the Supreme Court held that "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved," and that the hours devoted to unsuccessful claims should be subtracted from the number of hours reasonably expended on the case as a whole. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 (internal quotation marks omitted); *see also Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir.1997), *abrogated on other grounds, Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001) ("It is beyond peradventure that a District Court may exclude time for work on a claim on which the plaintiff did not prevail.").

The Court also recognized, however, that this task is a complicated one in civil rights cases, where many of the cases involve overlapping factual issues and related legal theories. In such a case, the district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. In *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160 (6th Cir.1996), the Sixth Circuit found that

a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised. When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct

claims, and the cost of litigating the related claims should not be reduced. *Id.* at 1169 (internal citation omitted). Ultimately, the Supreme Court found that "[t]here is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1941.

In this case, the defendant argues that the court should exclude these specific time entries and should also reduce the overall award to reflect the plaintiff's limited success. The plaintiff brought claims of both sexual harassment and retaliation for opposing the harassment. For the hostile environment sexual harassment claim, the plaintiff had to prove that her workplace was both objectively and subjectively hostile. For the retaliation claims, the plaintiff had to prove that she subjectively and reasonably believed that she was being sexually harassed. Although the jury found that the plaintiff was sexually harassed, the plaintiff did not prevail on that claim because the defendant proved the elements of its affirmative defense.

Because it is possible in this case to separate out certain time entries attributable solely to the sexual harassment claim, it would not be reasonable to reduce the overall fee request by a proportional amount because of the plaintiff's limited success. Aside from the expenses devoted to the sexual harassment claim, there is nothing in the record to suggest that the attorneys would have spent less time and effort to prosecute only the retaliation claim than they did to prosecute both of the plaintiff's claims.

On review of the record, the court finds that the above entries relate solely to the plaintiff's claim of hostile environment sexual harassment and should be excluded from the plaintiff's fee request. Arguably, the deposition and trial testimony of Gary Garrison and Katherine O'Rourke may have included testimony relevant to the plaintiff's retaliation claims. However, as the defendant has noted, the plaintiff has not divided the time devoted to these individuals from the time allotted to other individuals who did not offer any testimony relevant to the plaintiff's retaliation claim. The plaintiff argues that her complaints to various members of Cracker Barrel management are part of her retaliation claim and, thus, the expenses of gathering testimony relating to those complaints and to complaints in general should be recoverable. Given the jury's finding that the defendant proved its affirmative defense to sexual harassment, however, it is not clear that the jury gave any weight to testimony regarding the plaintiff's complaints to anyone other than her harasser, Kirk Hooper. Instead, this evidence appears to be relevant solely to the plaintiff's claim of sexual harassment.[5]

The court finds that it is reasonable to exclude time spent solely on the plaintiff's claim of sexual harassment. The plaintiff has not offered sufficient evidence to indicate that the above entries were not limited to the sexual harassment claim.[6] The

---

**5.** Even if some of this deposition testimony did relate to the plaintiff's retaliation claim in part, the court finds that it is reasonable to exclude this time from the plaintiff's fee request. The court has allowed other entries that relate to both claims, and, on balance, the exclusion of these fees serves to reflect the plaintiff's limited success on her claims.

**6.** The plaintiff argues that the "[d]efendant offers no support for its allegation that any of

these entries are related solely to the [sexual harassment] claim." (Docket No. 130 at 5) However, as discussed *supra,* the plaintiff bears the burden of establishing the reasonableness of the requested fees. The plaintiff failed to meet this burden in response to the defendant's objection to these entries. In addition, the court must consider the plaintiff's partial success in determining the number of hours reasonably expended in this case, re-

court will reduce the plaintiff's fee request by 37 hours and 30 minutes of Angel's time and 4 hours of Rayson's time.

### c. Entries Related Solely to Compensatory Damages

Finally, the defendant objects to some of the plaintiff's fee request as time spent solely in relation to the plaintiff's claim for compensatory damages. The jury did not award the plaintiff any compensatory damages in this case. After the verdict was returned, the court awarded the plaintiff $2,500 in back pay as compensatory damages on the retaliation claim. The defendant objects to the following entries: [7]

| ATTY | DATE | DESCRIPTION | TIME |
| --- | --- | --- | --- |
| Burkhalter | 6/24/98 | Letter to client re Dr. Moore's Economic Appraisal Report | 0:15 |
| Burkhalter | 7/6/99 | Letter to Dr. Moore regarding Laurie Reed | 0:15 |
| Burkhalter | 8/10/99 | Review of Dr. Moore's report; prepare Rule 26(a)(2) disclosure | 1:00 |
| Angel | 5/30/00 | Meeting with Lynn Griffis; Meeting with Dr. John Moore; Attend depositions of Griffis and Moore | 3:00 |

(Docket No. 126 at 8) In response to the defendant's objection, the plaintiff argues that Dr. Moore was hired as both a retained expert and a consulting expert on the issue of back pay. The plaintiff offered uncontradicted testimony at trial regarding her back pay damages, and Dr. Moore was not called to testify. Pursuant to an agreed pre-trial order, the issue of back pay was reserved for the court's determination. (Docket No. 93 at 4) Upon the plaintiff's motion, the court awarded the plaintiff $2,500 in back pay. (Docket No. 109) The court finds that the entries of Burkhalter relating to Dr. Moore are reasonable and relate to damages that the plaintiff was awarded. Angel's time entry, however, contains time spent with Dr. Moore and time spent with Lynn Griffis, who is apparently the plaintiff's father.[8]

The plaintiff has not divided this time or provided any evidence to assist the court in determining whether the time spent with Lynn Griffis is recoverable. Although Griffis did offer some testimony related to the sexual harassment claim, there is nothing in the record to suggest that his testimony was relevant to the retaliation claims or the issue of back pay. Thus, the court finds that this entry should be reduced by fifty percent (50%) to reflect the time spent meeting with and attending the deposition of Lynn Griffis. The fee request will be reduced by 1 hour and 30 minutes of Angel's time.

### 3. Adjustments to Lodestar Amount

On review of the record and in light of the defendant's objections, the court finds the following hours were reasonably ex-

gardless of the arguments presented by the parties.

7. The defendant also objects to the work release of Dishman and Matthews, entry date December 8, 2000, which the court excluded in the previous section. (Docket No. 126 at 8)

8. At trial, the plaintiff's father was listed as Leonard Griffis. Neither party has clarified whether Lynn Griffis is the same person, but that determination is not required for the court's decision.

pended by each of the plaintiff's attorneys at the stated rate:

| (1) Burkhalter | 20 hours 45 minutes | $225 / hour |
| (2) Rayson | 69 hours | $175 / hour |
| (3) Angel | 207 hours 30 minutes | $125 / hour |

Based on these figures, the lodestar amount is $42,681.25 ($4668.75 for Burkhalter; $12075.00 for Rayson; and $25,937.50 for Angel). The court must now consider whether this amount should be adjusted in light of the *Johnson* factors or other considerations.

Many of the *Johnson* factors were considered in relation to establishing a reasonable rate for attorneys on this type of case in this geographical area. The plaintiff has not made any argument that her case was more complicated or time-consuming than the average Title VII case and has not requested that the lodestar figure be adjusted upward in any way. The defendant argues that the lodestar figure should be reduced to reflect the plaintiff's limited success and in light of the contingency agreement between the plaintiff and her attorneys. The court has already addressed the former argument and finds it inappropriate to reduce the lodestar amount further on this basis.

With regard to the contingency agreement, the defendant has submitted the written agreement, which states that the plaintiff will compensate her attorneys at a rate of forty percent (40%) of her overall recovery. (Docket No. 126, attach. Ex. A) The defendant argues that the fee request should be limited to $5,000, which is forty percent of the punitive and back pay damages awarded to the plaintiff. The Supreme Court has addressed this argument and held that "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees." *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989). Although the contingency fee agreement may be considered as a factor in determining the reasonableness of the fee request, it does not preclude higher or lower fee awards. The court finds that a limit of $5,000 would not be reasonable in this case. The plaintiff's attorneys devoted a considerable, but not excessive, amount of time and effort to this case. The plaintiff established a *prima facie* case of sexual harassment and succeeded on her claims of retaliation for opposing the harassment. Although the plaintiff received only limited compensatory damages, the jury awarded punitive damages due to the egregiousness of the defendant's behavior. In light of these facts, the court finds that the contingency fee agreement does not establish a reasonable amount of compensation in this case and will not adjust the lodestar amount on this basis.

Finally, the defendant argues that the fee award should "in no event" be set "in excess of $9,375.00 representing 75% of the total punitive and back wage awards." (Docket No 126 at 9) The defendant offers no argument in support of this figure, and the court is not persuaded that it represents reasonable compensation in this case.

After reviewing the record, the plaintiff's attorney's time records, and the defendant's objections, the court finds that the lodestar amount represents reasonable compensation in this case. On her motion for the award of attorney's fees, judgment will be entered in favor of the plaintiff in the amount of $42,681.25.

### D. PREJUDGMENT INTEREST

The plaintiff has also moved for an award of prejudgment interest on the award of $2,500 in back pay. (Docket No. 116) The defendant has failed to respond to this motion and, therefore, has waived any objections.

In the Sixth Circuit, "[a]n award of 'prejudgment interest ... is an element of complete compensation' in a Title VII back pay award." *E.E.O.C. v. Wilson Metal*

*Casket Co.*, 24 F.3d 836, 841–42 (6th Cir. 1994) (quoting *Loeffler v. Frank*, 486 U.S. 549, 558, 108 S.Ct. 1965, 1971, 100 L.Ed.2d 549 (1988) (citations omitted)). "Prejudgment interest helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred". *Id.; see also Thurman*, 90 F.3d at 1170 ("Prejudgment interest is usually appropriate to make a discrimination plaintiff whole.").

Under Tennessee law, the award of prejudgment interest is an equitable decision that may be left to the sound discretion of the trial court. *See* TENN. CODE ANN. § 47–14–123 (1998); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn.1998). In *Myint*, the Tennessee Supreme Court stated:

> Several principles guide trial courts in exercising their discretion to award or deny prejudgment interest. Foremost are the principles of equity. Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing.

*Myint*, 970 S.W.2d at 927 (internal citation omitted).

In this case, the plaintiff did not specify whether she was seeking prejudgment interest on the back pay award under state or federal law. (Docket No. 104) The court awarded back pay as a result of the jury's finding in favor of the plaintiff on her retaliation claims without specifying whether the damages were for the state or federal claim. (Docket No. 109)

The defendant did not dispute the amount of the back pay award, which was derived from the plaintiff's uncontested trial testimony.[9] The Tennessee Supreme Court has found that "if the existence or the amount of an obligation is certain, this fact will help support an award of prejudgment interest as a matter of equity." *Myint*, 970 S.W.2d at 928. Under federal law, the Sixth Circuit has held that prejudgment interest is necessary to compensate the plaintiff fully for her damages. *See Wilson Metal Casket Co.*, 24 F.3d at 841–42; *see also E.E.O.C. v. Kentucky State Police Dep't*, 80 F.3d 1086, 1098 (6th Cir. 1996) (noting that " 'it is ordinarily an abuse of discretion *not* to include prejudgment interest in a back-pay award' " (quoting *Clarke v. Frank*, 960 F.2d 1146, 1154 (2d Cir.1992)) (emphasis in original)).

On review, the court finds that the plaintiff is entitled to prejudgment interest on her back pay award under both federal and state law. Thus, the plaintiff's motion for an award of prejudgment interest is granted.

The plaintiff did not offer any evidence to support a specific rate of interest on her claim. As noted, the defendant did not respond to the plaintiff's motion for prejudgment interest. Under Tennessee law, the interest rate may be established by the court as a matter of equity "at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." TENN. CODE ANN. § 47–14–123 (1998). Tennessee law prohibits the award of compound interest under this statute. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 447 (Tenn.1992) (finding that

---

9. The defendant argued instead that the plaintiff was not entitled to an award of back pay because her interim earnings were greater than the amount of back pay to which she would otherwise be entitled. (Docket No. 107) This argument was addressed by the court in its prior order awarding back pay to the plaintiff. (Docket No. 109)

the statutory language limits prejudgment interest to simple interest). Under federal law, the rate of interest is left to the discretion of the trial court, although the rate should reflect both inflation and the time value of the lost money. *See United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir.1998) (invalidating interest rate based on Consumer Price Index ("CPI") because the CPI adjusts for inflation but does not account for the time value of the lost money). In addition, under federal law, the decision of whether to award simple or compounded interest is in the discretion of the trial court, although the Sixth Circuit has noted that compounded interest would compensate the victim more fully. *See Kentucky State Police Dep't*, 80 F.3d at 1098.

The court finds that a reasonable and equitable interest rate in this case is the Tennessee prejudgment interest rate of ten percent (10%) per annum. Because the court is utilizing the Tennessee prejudgment interest rate, the court finds that the interest should be simple rather than compound. The relatively high interest rate ensures that the plaintiff is compensated fully without the necessity of compounded interest. Therefore, the plaintiff is granted simple interest on the award of $2,500 in back pay at the rate of ten percent (10%) per annum, calculated from the date of the plaintiff's termination, January 8, 1998, until the date that judgment was entered in this case, January 17, 2001. This amounts to $750 for the period between January 8, 1998 and January 7, 2001, plus $6.85 for the period from January 8, 2001 to January 17, 2001. Thus, the plaintiff is awarded $756.85 in prejudgment interest on the award of back pay.

## II. CONCLUSION

As the prevailing party, the plaintiff is entitled to the award of reasonable attorney's fees and costs in this case. The plaintiff's motion for attorney's fees and costs is **GRANTED** in part and **DENIED** in part. On review of the record, the court finds that reasonable attorney's fees in this case are limited to $42,681.25, and taxable costs are limited to $3,360.87. Thus, the plaintiff is awarded $46,042.12 in fees and costs. The plaintiff's request for additional fees and costs is denied.

The plaintiff's unopposed motion for prejudgment interest on her award of back pay is **GRANTED.** The court finds that a reasonable and equitable rate is ten percent (10%) per annum, simple interest, from the date of the plaintiff's termination until the date judgment was entered in this case. Thus, the plaintiff is awarded $756.85 in prejudgment interest.

It is so Ordered.